IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON


PAULA K. STONE,                          08-CV-356-BR

        Plaintiff,

                                         OPINION AND ORDER
v.                                       Portland Division

BAYER CORPORATION LONG TERM
DISABILITY PLAN and BAYER
CORPORATION,

        Defendants.


**RALPH E. WISER**
Wiser & Associates
1 Centerpointe Drive, Suite 570
Lake Oswego, OR 97035
(503) 620-5577

        Attorneys for Plaintiff

**KATHERINE S. SOMERVELL**
Bullivant Houser Bailey, PC
300 Pioneer Tower
888 S.W. Fifth Avenue
Portland, OR 97204
(503) 499-4454

1 - OPINION AND ORDER

**NICOLE A. DILLER**
**DONALD P. SULLIVAN**
Morgan Lewis & Bockius LLP
One Market Street
Spear Street Tower
San Francisco , CA 94105
(415) 442-1312

        Attorneys for Defendants


**BROWN, Judge.**

    This matter comes before the Court on Defendants' Motion (#54) for Summary Judgment and Plaintiff's Cross-Motion (#58) for Summary Judgment.  For the reasons that follow, the Court **DENIES** Defendants' Motion for Summary Judgment and **GRANTS** Plaintiff's Cross-Motion for Summary Judgment.


<u>**BACKGROUND**</u>

**I.   Long-Term Disability Plan Language**

    The Bayer Corporation Long-Term Disability (LTD) Plan provides in pertinent part:

>        If you are continuously disabled, [long-term
>        disability] LTD benefits begin on the later of:
>
>        *    The first day of the 27th week after your
>             disability begins
>
>        or
>
>        *    The first day after short-term disability
>             benefits stop.
>
>        For LTD benefits to begin, you must be unable to
>        perform the essential duties of your regular
>        occupation.  You must provide the company and

2 - OPINION AND ORDER

claims administrator periodically with proof of
your disability and your disability will need to
be medically verified.  The claims administrator
may ask you to be examined by an independent
doctor to verify your continuing disability.

After six months of receiving LTD benefits, you
must be "totally disabled" to continue eligibility
for benefits.  "Totally disabled" means you are
unable to work at any job for which you are or
could become qualified by education, training, or
experience.

Administrative Record (AR) 37.

## II.  Factual Background

Plaintiff began working for Defendant Bayer Corporation as a
pharmaceutical sales representative on November 10, 1997.
Plaintiff applied for short-term disability leave on February 9,
1998.  Plaintiff did not return to work and applied for LTD
benefits on July 31, 1998.  Plaintiff began receiving LTD
benefits in August 1998.  On November 18, 1998,  Broadspire
Administrative Services, Inc., the company Bayer contracted with
to administer its LTD Plan, denied Plaintiff's claim for benefits
under the exclusion in the LTD Pan for disabilities resulting
from "employment-related mental or emotional stress."

Plaintiff appealed Broadspire's denial to Bayer's ERISA
Review Committee on December 28, 1998.  The Review Committee
upheld Broadspire's denial.

On November 3, 2000, Plaintiff filed an action in this
Court, 00-CV-1499-BR (*Stone I*), in which she alleged Bayer
violated ERISA, 29 U.S.C. § 1132(a)(1)(B), when it failed to pay

3 - OPINION AND ORDER

LTD benefits to Plaintiff.  On January 15, 2002, Magistrate Judge
Dennis James Hubel issued Findings and Recommendation in *Stone I*
in which he recommended the Court review the denial of
Plaintiff's LTD benefits under an abuse-of-discretion standard,
grant Bayer's motion for summary judgment, and deny Plaintiff's
motion for summary judgment.

On May 9, 2002, the Court issued an Opinion and Order in
*Stone I* in which it adopted the Magistrate Judge's recommendation
as to the abuse-of-discretion standard of review, but the Court
did not adopt his recommendation as to the merits.  The Court
noted the parties in *Stone I* agreed Plaintiff was disabled within
the meaning of the LTD Plan at the time she applied for LTD
benefits.  Bayer, nonetheless, denied Plaintiff's claim because
it concluded her disability was caused by work-related stress,
and, therefore, her disability was excluded under the LTD Plan.
The Court concluded Bayer's application of the LTD Plan's work-
related stress exclusion was an abuse of discretion because "the
record lack[ed] competent expert opinion evidence that
Plaintiff's disability was caused by work-related stress."

On January 27, 2003, the Court entered a Judgment in *Stone I*
awarding benefits and attorneys' fees to Plaintiff.

On March 23, 2005, Broadspire informed Plaintiff that it had
determined Plaintiff could perform sedentary work, and,
therefore, she was no longer totally disabled under the terms of

4 - OPINION AND ORDER

the LTD Plan.  Broadspire, therefore, terminated Plaintiff's LTD benefits as of March 31, 2005.

On September 21, 2005, Plaintiff appealed Broadspire's decision to Bayer's ERISA Review Committee.  On January 30, 2006, the Review Committee denied Plaintiff's appeal and upheld Broadspire's decision to terminate Plaintiff's LTD benefits.

In their January 30, 2006, denial, the Review Committee noted it was Plaintiff's "medical condition as of March 31, 2005 on which the Committee [was] required to focus because that is the date that she was determined to no longer be disabled." AR 130.  The Review Committee noted it examined and relied on peer reviews of Plaintiff's medical records conducted by eleven doctors before Broadspire made its March 31, 2005, decision to terminate benefits as well as "independent third-party reviews" that were conducted by two doctors after March 31, 2005, which included reviews of the materials submitted by Plaintiff with her appeal to the Review Committee.  AR 131.  The Review Committee also noted the record reflected Plaintiff was awarded Social Security disability benefits in 1997 and that the award was renewed in 2004.  Broadspire, however, did not give those decisions "significant weight" because the record before Broadspire did not include the decisions of the Social Security Administration (SSA), those decisions were contrary to the opinions of the doctors who reviewed Plaintiff's medical record,

5 - OPINION AND ORDER

and

> Social Security determinations apply a presumption
> in favor of the views of treating physicians,
> which we do not, and they may be affected by other
> considerations which do not affect our review,
> such as the aggressiveness with which a claim is
> presented or opposed in the agency.

AR 132.  Accordingly, Defendants terminated Plaintiff's LTD

benefits retroactive to April 1, 2005.

On March 24, 2008, Plaintiff filed a Complaint in this Court

against Defendants Bayer LTD Plan and Bayer Corporation (*Stone

II*) in which she alleged Defendants violated ERISA, 29 U.S.C.

§ 1132(a)(1)(B), when they terminated Plaintiff's LTD benefits.

Plaintiff sought a judgment for (1) payment of a monthly benefit

under the LTD Plan's terms in the net amount of approximately

$2,450 per month from the date of the last benefit payment "in or

about March of 2005" through the date of judgment pursuant to 29

U.S.C. § 1132(a)(1)(B); (2) a declaration that Plaintiff is

entitled to receive a monthly benefit under the LTD Plan as long

as Plaintiff remains totally disabled pursuant to the LTD Plan's

terms; and (3) pre- and post-judgment interest.

On March 25, 2008, Plaintiff filed an Amended Complaint in

*Stone II* containing the same allegations and adding the following

request for relief:  "For a declaration that Plaintiff is

entitled to receive any other benefits that accrue as a result of

Plaintiff's status as a Plan beneficiary with a long term

disability, including but not limited to health insurance, life

6 - OPINION AND ORDER

insurance, dental benefits, supplemental accidental death and dismemberment insurance, and prescription drug coverage."

On January 29, 2009, the Court held a hearing as to the standard of review to be applied in this matter.  On that same date, the Court issued an Order that Defendants have a structural conflict of interest, and, therefore, the standard of review that applies is abuse of discretion.

The parties filed Cross-Motions for Summary Judgment as to the merits.

## STANDARD OF REVIEW

Although this matter is before the Court on cross-motions for summary judgment, the usual summary-judgment standard under Federal Rule of Civil Procedure 56 is not applicable to ERISA actions.  When reviewing a benefit plan's decision to deny benefits, "a motion for summary judgment is merely the conduit to bring the legal question before the district court and the usual tests of summary judgment, such as whether a genuine dispute of material fact exists, do not apply."  *Bendixen v. Standard Ins. Co.*, 185 F.3d 939, 942 (9th Cir. 1999).

**I.   The abuse-of-discretion standard of review applies in this matter.**

When an ERISA plan provides the plan administrator with discretionary authority to determine eligibility for benefits, the district court ordinarily reviews the plan administrator's

decision to grant or to deny benefits for an abuse of discretion. *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989).

"Abuse of discretion review applies to a discretion-granting plan even if the administrator has a conflict of interest . . . . [T]hat conflict[, however,] must be weighed as a factor in determining whether there is an abuse of discretion." *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955, 965 (9th Cir. 2006) (quotation omitted). "A district court when faced with all the facts and circumstances, must decide in each case how much or how little to credit the plan administrator's reason for denying insurance coverage. An egregious conflict may weigh more heavily . . . than a minor, technical conflict might." *Id*. at 968.

> The level of skepticism with which a court views a conflicted administrator's decision may be low if a structural conflict of interest is unaccompanied, for example, by any evidence of malice, of self-dealing, or of a parsimonious claims-granting history. A court may weigh a conflict more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incor-rectly or by making decisions against the weight of evidence in the record.

*Id*. at 968-69 (citations omitted).

Plaintiff bears the burden to establish that she is disabled and, therefore, is entitled to benefits.

Generally the district court only reviews

8 - OPINION AND ORDER

> the administrative record when considering whether
> the plan administrator abused its discretion, but
> may admit additional evidence on *de novo* review.
> That principle is consistent with *Tremain*, 196
> F.3d at 976-79, which permits extrinsic evidence
> on the question of a conflict of interest.   The
> district court may, in its discretion, consider
> evidence outside the administrative record to
> decide the nature, extent, and effect on the
> decision-making process of any conflict of
> interest; the decision on the merits, though, must
> rest on the administrative record once the
> conflict (if any) has been established, by
> extrinsic evidence or otherwise.

*Id.* at 970.

"[P]rocedural irregularities in processing an ERISA claim do

not usually justify *de novo* review." *Id.* at 972. "There are,

however, some situations in which procedural irregularities are

so substantial as to alter the standard of review" such as when a

plan administrator "engages in wholesale and flagrant violations

of the procedural requirements of ERISA, and thus acts in utter

disregard of the underlying purpose of the plan." *Id.* at 971.

In that instance, the Court must review *de novo* the admini-

strator's decision to deny benefits. *Id.*

"When a plan administrator has failed to follow a procedural

requirement of ERISA, the court may have to consider evidence

outside the administrative record." *Id*. at 972-73.

> Even when procedural irregularities are smaller,
> . . . and abuse of discretion review applies, the
> court may take additional evidence when the
> irregularities have prevented full development of
> the administrative record.   In that way the court
> may, in essence, recreate what the administrative
> record would have been had the procedure been

correct.

*Id.* at 973.

Accordingly, as the Court concluded in its January 29, 2009, Order, the abuse-of-discretion standard of review applies in this matter.

## II.  Level of scrutiny.

Although the Court determined it will review Defendants' decision for abuse of discretion, the Court must now determine "the . . . level of scrutiny with which to review the denial." *Peterson v. Fed. Express Corp. Long Term Disability Plan*, No. CV-05-1622-PHX-NVW, 2007 WL 1624644, at *19 (D. Ariz. June 4, 2007) (citing *Abatie*, 458 F.3d at 965).  When the administrator of a benefit plan also operates as the funding source, a conflict of interest is "inherent," and generally the court must give it some weight "even if [the conflict is] merely formal and unaccompanied by indicia of bad faith" because it creates an "incentive to pay as little in benefits as possible to plan participants." *Abatie*, 458 F.3d at 965-66.  In addition, when determining the level of scrutiny to apply, courts also may consider familiar factors such as evidence of malice, self-dealing, "a parsimonious claims-granting history," inconsistent reasons for denial, inadequate investigation into a claim, failure to credit a claimant's reliable evidence, a history of denying "benefits to deserving participants by interpreting plan terms incorrectly or by making

decisions against the weight of evidence in the record," and
procedural irregularities. *Id. at* 968, 972. Defendants here
have a structural or inherent conflict of interest. The Court,
therefore, must give that fact "some weight" when reviewing
Defendants' decision to deny Plaintiff's claim for benefits.

Defendants contend their conduct warrants a low level of
scrutiny by the Court. Defendants rely on *Metropolitan Life
Insurance Company v. Glenn* to support their position. In
*Metropolitan Life,* the Supreme Court noted

> when judges review the lawfulness of benefit
> denials, they will often take account of several
> different considerations of which a conflict of
> interest is one. . . . In such instances, any one
> factor will act as a tiebreaker when the other
> factors are closely balanced, the degree of
> closeness necessary depending upon the tiebreaking
> factor's inherent or case-specific importance.
> [A] conflict of interest. . ., for example, should
> prove more important (perhaps of great importance)
> where circumstances suggest a higher likelihood
> that it affected the benefits decision, including,
> but not limited to, cases where an insurance
> company administrator has a history of biased
> claims administration. It should prove less
> important (perhaps to the vanishing point) where
> the administrator has taken active steps to reduce
> potential bias and to promote accuracy, for
> example, by walling off claims administrators from
> those interested in firm finances.

128 S. Ct. 2343, 2351 (2008)(citations omitted). Defendants note
they have taken steps to reduce any potential bias and to promote
accuracy when processing claims including hiring Broadspire, an
independent claims administrator who is paid only a flat fee
without incentives; setting up the ERISA Review Committee, which

11 - OPINION AND ORDER

is not paid for its efforts; and setting up a trust administered by an independent third party and funded in part by Bayer Corporation and in part by participants.

Plaintiff, on the other hand, contends the Court should review Defendants' decision with a high level of scrutiny because Defendants failed to investigate Plaintiff's claim adequately and ignored favorable "medical and other information relevant to a full and fair review of the claim."

In *Abatie v. Alta Health & Life Insurance Company*, the Ninth Circuit found

> [a] court may weigh a conflict [of interest] more heavily if, for example, the administrator provides inconsistent reasons for denial, fails adequately to investigate a claim or [to] ask the plaintiff for necessary evidence, fails to credit a claimant's reliable evidence, or has repeatedly denied benefits to deserving participants by interpreting plan terms incorrectly or by making decisions against the weight of evidence in the record.

458 F.3d 955, 968-69 (9th Cir. 2006)(citations omitted).  Here the record reflects the ERISA Review Committee provided several medical experts with Plaintiff's medical records and information and followed their recommendations regarding Plaintiff's level of disability.  Defendants also retained physicians to review Plaintiff's appeal of Broadspire's decision.  Finally, the record reflects the ERISA Review Committee required one of its members to review Plaintiff's entire claim and appeal files.  Nevertheless, the record also reflects Defendants provided Plaintiff with

12 - OPINION AND ORDER

benefits from November 1998 to March 2005 (*i.e.*, for over six years) because the Court ordered them to do so and terminated her benefits on March 31, 2005, which was only three months after paying Plaintiff her back benefits.  In addition, although the ERISA Review Committee stressed it terminated Plaintiff's benefits because it determined she was no longer disabled as of March 31, 2005, the reports of several of the reviewing physicians on whom the ERISA Review Committee relied were written well before March 31, 2005, while Defendants were still providing Plaintiff with LTD benefits.

On this record, the Court concludes a "moderate level" of scrutiny of Defendants' decision to terminate Plaintiff's benefits is appropriate.


### DISCUSSION

On January 30, 2006, Defendants upheld the termination of Plaintiff's LTD benefits on the ground that she did not establish she was "incapable of performing any work for which she is or could become qualified by education or training."  AR 132.

Applying the abuse-of-discretion standard of review, the Court must determine whether Defendants abused their discretion when they terminated Plaintiff's LTD benefits.  An admini-strator's decision is an abuse of discretion when it is "'without reason, unsupported by substantial evidence or erroneous as a

13 - OPINION AND ORDER

matter of law.'"  *Riffey v. Hewlett-Packard Co. Disability Plan*,
No. CIV. S-05-1331 FCD/JFM, 2007 WL 946200, at *14 (E.D. Cal.
Mar. 27, 2007)(quoting *Abnathya v. Hoffman-LaRoche, Inc.*, 2 F.3d
40, 45 (3d Cir. 1993)).  If an administrator's decision has a
rational basis, the court may not substitute its judgment for
that of the administrator's determination as to eligibility for
plan benefits even if the court disagrees with the
administrator's decision.  *Id.*  Under the abuse-of-discretion
standard, the court's inquiry "is not into whose interpretation
of the evidence is most persuasive, but whether the plan
administrator's interpretation is unreasonable." *Clark v. Wash*.
*Teamsters Welfare Trust*, 8 F.3d 1429, 1432 (9th Cir. 1993)
(quotation omitted).  Finally, "the focus of an abuse of
discretion inquiry is the administrator's analysis of the
administrative record - it is not an inquiry into the underlying
facts." *Riffey*, 2007 WL 946200, at *14 (citing *Alford v. DCH
Found. Group Long-Term Disability Plan*, 311 F.3d 955, 957 (9th
Cir. 2002)).

     Plaintiff contends the fact that Defendants cannot point to
any new medical evidence that shows Plaintiff's condition
improved after March 31, 2005, to a degree that she is no longer
disabled weighs heavily against Defendants' decision to terminate
her disability benefits.  Defendants, in turn, rely on the
reports of a number of reviewing doctors to support their

decision to terminate benefits.[1]  As noted, however, several
reports on which Defendants rely address Plaintiff's condition
before March 31, 2005, during which time Defendants paid LTD
benefits to Plaintiff.

For example, in May 2003, Gerald Goldberg, M.D., a reviewing
neurologist, opined Plaintiff's neurological condition did not
preclude her from "any type of work." AR 370-74.  In June 2003,
Russell Superfine, M.D., an internal medicine specialist, opined
Plaintiff was not precluded from "any type of work."  AR 375-77.
In June 2003 and August 2004, Ira Feldman, M.D., a reviewing
cardiologist, concluded Plaintiff was not precluded from
performing either her own occupation or "any occupation."
AR 378-80, 389-91.  Similarly, in July 2004, four other reviewing
medical specialists found Plaintiff was not precluded from "any
type of work."  As noted, each of these opinions referenced
Plaintiff's symptoms before March 31, 2005, during the time
Defendants concluded Plaintiff was eligible for benefits.  The
Court, therefore, accords these opinions little weight in
determining whether Defendants abused their discretion when they

---

[1] The parties do not address whether the policy requires
Defendants to show Plaintiff's condition "improved" after
March 31, 2005. *See Torres v. Reliance Standard Life Ins. Co.*,
07-CV-202-BR (D. Or. Jan. 15, 2010).  Accordingly, the Court
construes the parties' arguments as to whether Plaintiff's
condition improved only as they relate to the question whether
Defendants abused their discretion in determining Plaintiff was
no longer eligible for disability benefits.

15 - OPINION AND ORDER

terminated Plaintiff's benefits in March 2005.

Defendants also rely on reports of three reviewing physicians enlisted by the ERISA Review Committee to review Plaintiff's medical record, which included records produced by Plaintiff to establish her continued disability after March 31, 2005. In November 2005, James Wallquist, M.D., an orthopedic surgeon, opined "the medical documentation provided pertaining to [Plaintiff's] musculoskeletal system . . . fails to support a functional impairment that would preclude [Plaintiff] from engaging in any occupation from 3/31/05." AR 419. In December 2005, Richard L. Green, M.D., opined Plaintiff was not "totally disabled from performing her position of pharmaceutical representative" or "from employment in any position for which she could become qualified by education, training or experience" from "an allergy/immunologic perspective." AR 455. Finally, in December 2005, Jon B. Tucker, M.D., an orthopedist, found his "diagnostic evaluation did not reveal any orthopedic diagnosis that confers disability for her occupation." AR 458.

Plaintiff, however, points to reports of her treating physicians after March 31, 2005, in which they opine Plaintiff's condition has not improved and that she remains disabled. For example, on April 19, 2005, John McAnulty, M.D., noted Plaintiff suffers from severe allergies, including allergies to "medical environments" to a degree that "she simply cannot enter any

16 - OPINION AND ORDER

medical facility, clinic or office and even being around medical
personnel has resulted in allergic flare-ups" that cause her to
be unable to "get the appropriate next step in cardiac care[,
which] . . . results in complete disability."  AR 1943.  On
July 13, 2005, Franklin Coale, M.D., noted Plaintiff had "been
housebound for the last 18 months because of mold sensitivities
and multiple anaphylactic reactions."  AR 1940.  Similarly, on
September 1, 2005, Gunnar Heuser, M.D., opined Plaintiff suffered
from Toxic Encephalopathy and "at times life threatening allergic
reactions brought on by Immune System Dysfunction as well as
Asthma and Reactive Airway Disease."  AR 1944.

        Defendants, however, correctly point out that plan
administrators in the ERISA context are not required to give
greater weight to a plaintiff's treating physicians.  *Black &
Decker Disab. Plan v. Nord,* 538 U.S. 822, 834 (2003)("courts have
no warrant to require administrators automatically to accord
special weight to the opinions of a claimant's physician; nor may
courts impose on plan administrators a discrete burden of
explanation when they credit reliable evidence that conflicts
with a treating physician's evaluation.").  Nevertheless, as part
of its moderate level of scrutiny of Defendants' decision to
terminate Plaintiff's benefits, the Court necessarily will
consider the record as a whole and, in particular, whether
Plaintiff's condition improved or substantially changed between

17 - OPINION AND ORDER

the time Defendants initially deemed her eligible for benefits
and the time Defendants reversed their decision.  Accordingly,
the Court gives moderate weight to the opinions of Plaintiff's
treating physicians that Plaintiff continued to suffer
debilitating health problems after Defendants terminated
Plaintiff's benefits.

Plaintiff also contends Defendants abused their discretion
when they failed to consider Plaintiff's award of disability
benefits from the SSA in 1997 and 2004 after they encouraged
Plaintiff to apply for such benefits.  In *Metropolitan Life*, the
Supreme Court found the Sixth Circuit did not err when it
concluded Metropolitan Life abused its discretion by terminating
claimant's benefits because the court

> found questionable the fact that MetLife had
> encouraged Glenn to argue to the Social Security
> Administration that she could do no work, received
> the bulk of the benefits of her success in doing
> so (the remainder going to the lawyers it
> recommended), and then ignored the agency's
> finding in concluding that Glenn could in fact do
> sedentary work.  This course of events was not
> only an important factor in its own right (because
> it suggested procedural unreasonableness), but
> also would have justified the court in giving more
> weight to the conflict (because MetLife's
> seemingly inconsistent positions were both
> financially advantageous).  And the court
> furthermore observed that MetLife had emphasized a
> certain medical report that favored a denial of
> benefits, had deemphasized certain other reports
> that suggested a contrary conclusion, and had
> failed to provide its independent vocational and
> medical experts with all of the relevant evidence.

128 S. Ct. at 2352.  Here the ERISA Review Committee did not

ignore the SSA's finding that Plaintiff was disabled even though
it accorded the SSA's finding little weight on the grounds that
it did not have the SSA's decision to review; SSA determinations
apply a "presumption in favor of the views of treating
physicians," which the ERISA Review Committee is not required to
do; and the doctors who reviewed Plaintiff's medical record did
not find Plaintiff was disabled.

     To further support Plaintiff's contention that Defendants
abused their discretion, Plaintiff points to the fact that in
*Stone I*, Defendants conceded Plaintiff was disabled at the time
she requested LTD benefits.  In *Stone I*, Defendants denied
Plaintiff's claim on the ground that her disability was caused by
work-related stress.  After the Court concluded Defendants abused
their discretion when they denied Plaintiff's claim on that basis
and Defendants paid Plaintiff her back benefits, Defendants then
proceeded to terminate Plaintiff's benefits after only three
months on the ground that she was no longer disabled.
Defendants, therefore, have a history of denying Plaintiff's
claims and providing inconsistent reasons for denying Plaintiff's
claims.

     After applying the abuse-of-discretion standard and
employing a moderate level of scrutiny to this record, the Court
finds Defendants abused their discretion when they terminated
Plaintiff's LTD benefits.  The Court, like the *Metropolitan Life*

19 - OPINION AND ORDER

Court, gives weight to the fact that Defendants in this case encouraged Plaintiff to argue to the SSA that she could not do any work; Defendants received some of the benefits of Plaintiff's success with her application for Social Security disability benefits through the provision of the LTD Plan that allows Defendants to decrease Plaintiff's LTD disability benefits by the amount of any SSA disability benefits she receives; and yet Defendants ultimately gave the SSA's findings and award of benefits little weight.  In addition, although Defendants conceded in *Stone I* that Plaintiff was disabled, Defendants have not identified sufficient evidence in the record to establish such disability which existed for years before no longer was present.  In short, it is not reasonable to conclude on this records that Plaintiff's established disability simply ceased to exist.

Accordingly, the Court grants Plaintiff's Motion for Summary Judgment and denies Defendants' Motion for Summary Judgment.


**CONCLUSION**

For these reasons, the Court **GRANTS** Plaintiff's Motion (#58) for Summary Judgment and **DENIES** Defendants' Cross-Motion (#54)

20 - OPINION AND ORDER

for Summary Judgment.

    IT IS SO ORDERED.

    DATED this 15th day of January, 2010.

                            /s/ Anna J. Brown

                          _____
                          ANNA J. BROWN
                          United States District Judge

21 - OPINION AND ORDER